UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

04 10641 RC

MAGISTRATE JUDGE _____

|  |  |
|---|---|
| ML Strategies, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. _____ |
| The Noisette Company, LLC d/b/a Noisette Company, | ) |
| Defendant. | ) |

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

## COMPLAINT

### INTRODUCTION

Plaintiff ML Strategies, LLC ("ML Strategies" or "MLS") brings this Complaint against Defendant The Noisette Company, LLC ("Noisette") seeking damages arising from Defendant's failure, in violation of its written contractual obligation, to pay a $250,000 Performance Bonus ("Performance Bonus") owed ML Strategies for strategic consulting services rendered by ML Strategies on Defendant's behalf. This is an action for breach of contract, quantum meruit/unjust enrichment, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive trade practices in violation of Mass. Gen. Laws c. 93A.

### PARTIES

1. Plaintiff ML Strategies, LLC is a Delaware limited liability corporation with a principal place of business at One Financial Center, Boston, Massachusetts. ML Strategies is a citizen of Massachusetts within the meaning of 28 U.S.C. § 1332(c)(1).

2. Defendant The Noisette Company, LLC is a South Carolina limited liability corporation with a principal place of business at 1360 Truxton Avenue, North Charleston, South

Carolina. Noisette does business at times under the name Noisette Company. Noisette is a citizen of South Carolina within the meaning of 28 U.S.C. § 1332(c)(1).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this case because of the complete diversity of citizenship of the parties and because the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

4. Venue is proper in this Court because ML Strategies has its principal place of business in Boston, Massachusetts. 28 U.S.C. § 1391(a).

## FACTS

5. ML Strategies is a strategic consulting company specializing in, among other things, government relations, real estate, and project development. ML Strategies has a practice group dedicated to assisting clients in connection with the redevelopment of former military bases.

6. Noisette is an entity created to redevelop the Charleston Naval Shipyard in North Charleston, South Carolina.

7. In January 2002, Noisette approached ML Strategies in Noisette's pursuit of redevelopment rights at the Charleston Naval Shipyard in North Charleston, South Carolina.

8. On February 14, 2002, the parties executed the Engagement Letter which sets out, among other things, the scope of consulting services to be provided by ML Strategies and the agreed-upon compensation due ML Strategies for its work on the project. A true and correct copy of the Engagement Letter executed by Defendant is attached hereto as Exhibit A.

9. The Engagement Letter provides for a monthly consulting fee of $10,000 for a twelve (12) month term, with an option to renew upon mutual agreement of the parties.

10.  In addition to the monthly consulting fee, the Engagement Letter also provides that Noisette shall pay ML Strategies a Performance Bonus of $250,000. The parties agreed to a $10,000 monthly consulting fee, which is significantly less than ML Strategies' typical monthly consulting fee, because the fee structure included the Performance Bonus. With respect to the Performance Bonus, the Compensation Section of the Engagement Letter states:

> upon the successful execution of a land disposition plan negotiated between Noisette and the City of North Charleston pursuant to this engagement letter, on or before January 1, 2003, MLS shall be paid a performance bonus in an amount equal to two hundred-fifty thousand dollars ($250,000) ... Said performance bonuses shall be payable on a schedule that MLS and Noisette will subsequently determine.

11.  Throughout the term of ML Strategies' engagement, ML Strategies successfully resolved issues stalling Noisette's development at the Naval Shipyard, and handled key interactions with the state redevelopment authority ("RDA") and the Department of Defense, agencies with which Noisette had no prior relationship. Among other things, ML Strategies expedited the survey and valuation of property owned by the Navy; assisted Noisette regarding environmental insurance issues for the property; facilitated transfer of regulatory permits from the RDA to the City of North Charleston (the "City"); assisted in strategies with respect to retaining properties that would otherwise revert to the City of Charleston; worked with the Economic Development Agency ("EDA") to resolve outstanding grant issues impeding land transfer from the EDA to the City; and participated in numerous meetings with the RDA, Noisette's board, and governmental representatives as well as weekly working group meetings with Noisette and the City.

12.  On or about November 1, 2002, and substantially assisted by ML Strategies' efforts, Noisette executed a Purchase and Sale Agreement with the City of North Charleston for certain parcels of land at the Charleston Naval Shipyard. A true and correct copy of the Purchase

and Sale Agreement is attached hereto as Exhibit B. The Purchase and Sale Agreement between the City and Noisette qualified as a "land disposition plan" under the Engagement Letter. Thus, upon negotiation and execution of the Purchase and Sale Agreement, which occurred before January 1, 2003, the Performance Bonus was due and payable to ML Strategies.

13. From April 2002 to January 2003, Noisette paid ML Strategies its $10,000 monthly consulting fees in a timely manner.

14. Noisette affirmatively represented to ML Strategies after January 1, 2003 that ML Strategies had earned the Performance Bonus, and that the only issue was the schedule on which the bonus would be paid.

15. Based on these assurances that Noisette would pay ML Strategies the Performance Bonus, ML Strategies continued to work on the project side-by-side with Noisette despite the fact that Noisette did not pay ML Strategies its monthly consulting fee in a timely manner for February or March 2003, the final two months of the contract. After the initial term of the contract ended, ML Strategies continued to provide substantial assistance to Noisette in April, May and June 2003, again without being timely paid any monthly consulting fees.

16. Noisette promised ML Strategies that it would pay ML Strategies everything it was owed, including the Performance Bonus, once the first phase of the land transfer occurred and certain financing and revenue became available to Noisette. The first phase of land transfer occurred in July 2003. Certain financing and revenue indeed became available to Noisette as a result. At this time, Noisette paid ML Strategies its monthly consulting fees for February through May 2003 but failed to pay ML Strategies the $250,000 Performance Bonus. ML Strategies demanded payment of the Performance Bonus but Noisette indicated that it could not pay ML Strategies because Noisette did not have sufficient funds to do so.

17.  After the first phase of land transfer in July 2003, Noisette continued to acknowledge, both orally and in writing, that the Performance Bonus was due and owing. At a meeting with Anthony Marken and David Shapiro of ML Strategies in August 2003, John Knott ("Knott"), Noisette's President and Chief Executive Officer, unequivocally promised that he would "honor the agreement" with ML Strategies regardless of whether or not Noisette was able to obtain the assistance of the City in paying the Performance Bonus.

18.  On or about September 15, 2003, Knott wrote an email to ML Strategies regarding the Performance Bonus. Although Knott's September 15, 2003 email to ML Strategies wrongly stated that ML Strategies had agreed to reduce the Performance Bonus to $125,000, Knott unambiguously acknowledged that "the performance payment of $125,000 is in principle understood," subject to resolving the timing and method of payment. A true and correct copy of the email is attached hereto as Exhibit C.

19.  At the same time, Noisette attempted to impose a new condition for payment of the Performance Bonus that was not part of the parties' bargain, i.e., that ML Strategies continue to provide services to Noisette at a substantial discount from the monthly rates set forth in the Engagement Letter. Specifically, Noisette insisted that in order to receive payment of the Performance Bonus to which ML Strategies was already entitled, ML Strategies would be required to continue working on the project at a reduced monthly rate of $5,000.

20.  ML Strategies has repeatedly requested payment of the Performance Bonus. By letter dated January 15, 2004, ML Strategies sent Noisette a formal invoice for the Performance Bonus. A true and correct copy of invoice dated January 15, 2004 is attached hereto as Exhibit D. Noisette failed and refused to make payment.

21. By letter dated March 19, 2004, Peter Biagetti of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., a law firm affiliated with ML Strategies, demanded payment of the Performance Bonus a final time before referring the matter to outside counsel. A true and correct copy of the March 19, 2004 letter is attached hereto as Exhibit E.

22. Noisette's attorney, W. Andrew Gowder, Jr., responded to Biagetti's March 19, 2004 letter by letter dated March 24, 2004. A true and correct copy of the March 24, 2004 letter is attached hereto as Exhibit F. In his letter, Noisette for the first time asserted that the Performance Bonus was not earned by ML Strategies because the property to be redeveloped was not actually transferred or conveyed from the City to Noisette prior to December 31, 2002.

23. This new position by Noisette is inconsistent with its past acknowledgments that ML Strategies has earned the Performance Bonus, as well as the plain language of the Engagement Letter which does not make conveyance or transfer of the property prior to December 31, 2002 a condition precedent to payment of the Performance Bonus.

24. To date, Noisette has not paid ML Strategies the amount due.

## COUNT I

### (Breach of Contract)

25. ML Strategies incorporates by reference the allegations contained in paragraphs 1 through 24 above.

26. ML Strategies performed its material obligations to earn the Performance Bonus under the Engagement Letter. By failing to compensate ML Strategies in accordance with the Engagement Letter, Defendant has breached its contractual obligations, and as a proximate result ML Strategies has suffered substantial damages.

## COUNT II

### (Quantum Meruit/Unjust Enrichment)

27. ML Strategies incorporates by reference the allegations contained in paragraphs 1 through 26 above.

28. At Defendant's request, ML Strategies furnished substantial and valuable strategic consulting services to Defendant, and incurred substantial expenses on Defendant's behalf, with the reasonable expectation of being compensated by way of the Performance Bonus if ML Strategies performed under the contract.

29. Defendant accepted ML Strategies' consulting services without objection and knew, or should have known, that ML Strategies expected Defendant to compensate ML Strategies by way of the Performance Bonus if ML Strategies performed under the contract.

30. Defendant has failed and refused to provide ML Strategies with the Performance Bonus, which ML Strategies earned by performing under the contract on behalf of Defendant and at its request.

31. As a result, Defendant has been unjustly enriched and ML Strategies has suffered substantial damages.

## Count III

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

32. ML Strategies incorporates by reference the allegations contained in paragraphs 1 through 31 above.

33. The contract between ML Strategies and Noisette contained the implied covenant of good faith and fair dealing.

34. Noisette breached the implied covenant of good faith and fair dealing by, among other things, (i) refusing to pay the Performance Bonus when it became due; (ii) stringing ML Strategies along and inducing ML Strategies into performing additional work on Noisette's behalf, while concealing Noisette's true intention to default on the Performance Bonus; and (iii) imposing a further condition for payment of the Performance Bonus that was not part of the parties' bargain, i.e., that ML Strategies provide future consulting services at a substantially reduced fee.

35. ML Strategies has suffered substantial damages as the result of Noisette's breach of the implied covenant of good faith and fair dealing.

### Count IV

**(Mass. Gen. L. c. 93A – Unfair and Deceptive Acts and Practices)**

36. ML Strategies incorporates by reference the allegations contained in paragraphs 1 through 35 above.

37. ML Strategies and Noisette are engaged in trade or commerce within the meaning of G.L. c. 93A.

38. Noisette's actions set forth above constitute unfair and deceptive practices within the meaning of M.G. L. c. 93A, § 2.

39. Such actions by Noisette were committed knowingly and willfully in violation of G.L. c. 93A, § 11.

40. As a direct and proximate result of Noisette's actions in violation of G.L. c. 93A, ML Strategies has suffered substantial damages.

## PRAYER FOR RELIEF

WHEREFORE, ML Strategies respectfully requests that this Court:

a. Enter judgment on Count I for ML Strategies, finding Defendant liable for breach of contract and award damages to ML Strategies in the amount to which it is entitled, plus costs and interest;

b. Enter judgment on Count II for ML Strategies, finding Defendant liable in quantum meruit/unjust enrichment and award damages to ML Strategies in the amount to which it is entitled, plus interest;

c. Enter judgment on Count III for ML Strategies, finding Defendant liable for breach of the implied covenant of good faith and fair dealing and award damages to ML Strategies in the amount to which it is entitled, plus interest;

d. Enter judgment on Count IV for ML Strategies, finding Defendant liable under M.G.L. c. 93A and award double or treble damages to ML Strategies, plus attorneys' fees and costs;

e. Award ML Strategies its attorneys' fees and costs; and

f. Award ML Strategies any such other relief as this Court deems equitable and just.

**ML STRATEGIES, LLC**

By its attorneys,

_____
David E. Lurie, BBO# 542030
Sara A. Laroche, BBO# 652479
Lurie & Krupp, LLP
One McKinley Square
Boston, MA 02109
Tel: 617-367-1970

Dated: April 2, 2004

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
ML Strategies, LLC

## DEFENDANTS
The Noisette Company, LLC
d/b/a Noisette Company

(b) County of Residence of First Listed Plaintiff **Suffolk**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
David E. Lurie
Lurie & Krupp, LLP
One McKinley Square, Boston, MA 02109

Attorneys (If Known)
W. Andrew Gowder, Jr.
Pratt-Thomas, Epting & Walker, PA
16 Charlotte St., Charleston, SC 29403

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury — Product Liability | | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 810 Selective Service |
| | | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment / Habeas Corpus: | | **FEDERAL TAX SUITS** | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.) Plaintiff seeks damages arising from Defendant's failure, in violation of its written contractual obligation, to pay Plaintiff a Performance Bonus for strategic consulting services.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 250,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE 4/2/04
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __ML Strategies, LLC v.__
   __The Noisette Company, LLC d/b/a Noisette Company__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ☐ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ☐ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,
          740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

   ☒ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
          315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
          380, 385, 450, 891.

   ☐ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
          690, 810, 861-865, 870, 871, 875, 900.

   ☐ V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   __N/A__

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES ☐    NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES ☒    NO ☐

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division ☒    Central Division ☐    Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES ☐    NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __David E. Lurie__
ADDRESS __Lurie & Krupp, LLP  One McKinley Square, Boston, MA 02109__
TELEPHONE NO. __617-367-1970__

(Coversheetlocal.wpd - 10/17/02)