UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04 10641 RCL

| | |
|---|---|
| ML Strategies, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )<br>)<br>) |
| The Noisette Company, LLC<br>d/b/a Noisette Company, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2) OR IN THE ALTERNATIVE FOR *FORUM NON CONVENIENS***

Now comes the defendant, The Noisette Company, LLC, d/b/a Noisette Company (hereinafter "Noisette"), pursuant to Rule 12(b)(2) and seeks a Motion to Dismiss in this case based on the lack of personal jurisdiction or in the alternative for *forum non conveniens*. Plaintiff ML Strategies, LLC (hereinafter "ML Strategies" or "MLS") has no basis for jurisdiction over Noisette and even if the requirements of the Massachusetts Long Arm Statute are satisfied, jurisdiction over Noisette is inconsistent with the due process requirements of the Fourteenth Amendment.

**I.   INTRODUCTION**

Plaintiff MLS brought this action against defendant Noisette on April 2, 2004 seeking damages alleging defendant's violation of a written contractual obligation. The plaintiff, a citizen of Massachusetts within the meaning of 28 U.S.C. § 1332(c)(1), seeks $250,000 in damages claiming a Performance Bonus is owed to them as a result of strategic consulting

931219v1

services rendered on behalf of defendant. The defendant is a citizen of South Carolina within the meaning of 28 U.S.C. § 1332(c)(1).

Plaintiff claims that the basis for the Court's jurisdiction in this matter is diversity of citizenship. However, because Noisette, does not reside in Massachusetts, received consulting outside of Massachusetts, and does not regularly do or solicit business, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in Massachusetts, the Court lacks personal jurisdiction over Noisette. Thus, the plaintiff's claims against Noisette must be dismissed.

## II.  RELEVANT FACTS

1. Plaintiff ML Strategies, LLC is a Delaware limited liability corporation with a principal place of business at One Financial Center, Boston, Massachusetts. (Exhibit "A," Plaintiff's Complaint).

2. MLS is a strategic consulting company specializing in, among other things, government relations, real estate, and project development. ML Strategies has a practice group dedicated to assisting clients in connection with the redevelopment of former military bases. (Exhibit "A," Plaintiff's Complaint).

3. Defendant The Noisette Company, LLC is a South Carolina limited liability corporation with a principal place of business at 1360 Truxton Avenue, North Charleston, South Carolina. (Exhibit "A," Plaintiff's Complaint).

4. Noisette is an entity created as recently as 2000 to redevelop portions of the Charleston Naval Shipyard in North Charleston, South Carolina. (Exhibit "B," Affidavit of Roger Noyes; Exhibit "C," Affidavit of Arthur L. Titus).

5. Noisette, since its creation, has not transacted business in any state other than South Carolina. (Exhibit "B," Affidavit of Roger Noyes; Exhibit "C," Affidavit of Arthur L. Titus).

6. Noisette was formed in October 2000 to sustainably redevelop an urban core of the City of North Charleston, South Carolina, centering on a closed naval base on the banks of the Cooper River. Noisette has had no business other than the redevelopment of this real property in South Carolina. (Exhibit "B," Affidavit of Roger Noyes; Exhibit "C," Affidavit of Arthur L. Titus).

7. In March 2001, Noisette entered into a Memorandum of Understanding (MOU) to acquire approximately three hundred fifty (350) acres of property on the former naval base from the City of North Charleston for a range of consideration, including the master planning of three thousand (3,000) acres of the City surrounding the closed naval base. (Exhibit "B," Affidavit of Roger Noyes; Exhibit "C," Affidavit of Arthur L. Titus).

8. The City agreed in the MOU to use its best efforts to acquire the property it agreed to sell to Noisette from the Charleston Naval Complex Redevelopment Authority (RDA), which is an agency of the State of South Carolina. The RDA is the governmental entity authorized by the Department of Defense (DOD) to receive transfers of title to the naval base land when the DOD determined the land was ready to transfer under applicable federal law and regulations. (Exhibit "B," Affidavit of Roger Noyes; Exhibit "C," Affidavit of Arthur L. Titus).

9. In the summer of 2001, the City entered into a Memorandum of Agreement (MOA) with the RDA in which the RDA agreed to convey the property the City had promised to transfer to Noisette on similar terms and conditions that were present in the MOU

between the City and Noisette. (Exhibit "B," Affidavit of Roger Noyes; Exhibit "C," Affidavit of Arthur L. Titus).

10. By the first quarter of 2002, though, the City had not been able to effect the transfer of any land from the RDA to the City in order to make possible a transfer from the City to Noisette. (Exhibit "B," Affidavit of Roger Noyes; Exhibit "C," Affidavit of Arthur L. Titus).

11. Noisette believed that assistance at the federal and state levels could be helpful to facilitate this transfer from the RDA to the City. (Exhibit "B," Affidavit of Roger Noyes; Exhibit "C," Affidavit of Arthur L. Titus).

12. Around February 2002, an investment broker from New York, Paul Tantillo (Tantillo), with whom Noisette had previously worked, recommended Anthony Marken (Marken) to Roger Noyes, the vice president of development with Noisette, and Tantillo, Marken and Noyes met in a telephone conversation. Tantillo suggested that Marken and his consulting firm, ML Strategies, could assist the City of North Charleston and Noisette in speeding the acquisition of the property from the DOD and the RDA. Marken stated that he and ML had extensive contacts within the Department of Defense and were experienced advisers in base closing procedures. Marken confirmed that he and ML could assist North Charleston to acquire these properties. (Exhibit "B," Affidavit of Roger Noyes).

13. Over the next twelve (12) to eighteen (18) months, Noyes was in contact with Marken off and on by telephone as he met with various officials on behalf of the City and Noisette to attempt to facilitate the transfer of land from the federal government and the RDA to Noisette. These phone conversations were normally with Marken on his cell phone, and

during those calls he was more frequently traveling in some location other than Boston than he was in his office in Massachusetts. (Exhibit "B," Affidavit of Roger Noyes).

14. Art Titus, the vice president for operations with Noisette, became acquainted with Marken at MLS after he began consulting and lobbying work on behalf of Noisette to effect a transfer of land from the DOD and the RDA. (Exhibit "C," Affidavit of Arthur L. Titus).

15. Titus talked to Marken with some frequency in the later part of 2002 and the first half of 2003. Marken and Titus called each other most of the time on their cell phones, and much of the time Marken was traveling and was in a location other than Boston. (Exhibit "C," Affidavit of Arthur L. Titus).

16. No representative of Noisette traveled to Boston for the purpose of meeting with Marken or any other representative of MLS. All personal meetings with Marken were in Charleston, South Carolina. Marken did contact persons on Noisette's behalf in Washington, DC, when he was there, and also traveled to Atlanta, Georgia to meet with lawyers for the federal government's Economic Development Agency (EDA), the RDA and the City of North Charleston. (Exhibit "B," Affidavit of Roger Noyes; Exhibit "C," Affidavit of Arthur L. Titus).

17. No representative of the Noisette Company traveled to Massachusetts to conduct any business with MLS or Marken. Noisette has not conducted business in Massachusetts or sought out business in Massachusetts. (Exhibit "B," Affidavit of Roger Noyes; Exhibit "C," Affidavit of Arthur L. Titus).

18. Noisette paid MLS its $10,000 monthly consulting fees in a timely manner. (Exhibit "A," Plaintiff's Complaint).

19. Noisette's letter agreement contained a performance bonus with a time deadline of December 31, 2002. Though MLS claims that it achieved the action that would entitle it to the performance bonus, Noisette does not agree that ML accomplished any event by December 31, 2002 that would trigger the bonus. (Exhibit "A," Plaintiff's Complaint).

### III. ARGUMENT

#### A. Massachusetts law determines whether the Court has jurisdiction over Noisette.

Since jurisdiction is based upon diversity of citizenship in this case, the Court must look to Massachusetts law to determine whether it has jurisdiction over Noisette. "In diversity actions where personal jurisdiction has been challenged in responsive pleadings or by a motion to dismiss, federal courts look to state law to determine whether jurisdictional requirements have been met." Gray v. O'Brien, 777 F.2d. 864, 866 (1985). The state law of the forum state applies. Noonan v. Winston Co., 902 F.Supp. 298, 302 (1995) ("When jurisdiction is grounded in diversity of citizenship, a federal court applies the law of the forum state to resolve the dispute.") In the case at bar, jurisdiction is based upon diversity of citizenship; therefore, the Court should look to Massachusetts law to determine whether it has personal jurisdiction over Noisette.

#### B. In Massachusetts, plaintiffs have the burden of establishing that personal jurisdiction exists under the Massachusetts Long Arm Statute.

Under the Massachusetts Long-Arm Statute, G.L. c.223A, jurisdiction is conferred "when some basis for jurisdiction enumerated in the Long-Arm Statute has been established" and when the "exercise of jurisdiction under State law [is] consistent with basic due process requirements mandated by the United States Constitution." Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). The plaintiff bears the burden, if challenged, of establishing that jurisdiction exists over the defendant. See Massachusetts School of Law at

Andover, Inc. v. American Bar Assoc., 142 F.3d 26, 34 (1st Cir. 1998 ); Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978).

The Massachusetts Long-Arm Statute, G.L. c.223A, §3 provides as follows:

A Court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's:

a.  transacting any business in this Commonwealth;

b.  contracting to supply services or things in this Commonwealth;

c.  causing tortious injury by an act or omission in this Commonwealth;

d.  causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;

e.  having an interest in, using or possessing real property in this Commonwealth;

f.  contracting to insure any person, property or risk located within this Commonwealth at the time of the contracting;

g.  living as one of the parties to a duly and legally executed marriage contract...; and

h.  having been subject to...an order for child support...by a Massachusetts court.

Given that this action arises from consulting services supplied outside of Massachusetts, it appears from the face of the statute that the only arguable basis for jurisdiction over Noisette would be to allege that Noisette was transacting business in the Commonwealth. However, it is clear that the requisite elements for jurisdiction over Noisette in this action under § 3(a) are not satisfied.

### C. The Court does not have jurisdiction over Noisette under the Massachusetts Long Arm Statute.

Given the nature of this action, it appears that the only basis for jurisdiction that the plaintiff could argue would apply would be that Noisette was transacting business in the Commonwealth. Whether Noisette was transacting business involves detailed examination of

the particular circumstances of this case. According to § 3(a), a court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action in law or equity arising from the person's "transacting any business in this commonwealth." G.L. c. 223A § 3(a). The "transacting any business" clause in § 3(a) has been broadly construed by Massachusetts courts. Bennett v. Jack Dennis Whitewater Trips, 925 F.Supp. 889 (D.Mass. 1996). However, in order for jurisdiction to exist pursuant to § 3(a), the facts must satisfy two requirements: 1) the defendant must have transacted business *in* Massachusetts, and 2) the plaintiff's claims must have arisen from the defendant's transaction of such business. Id. at 894. With respect to the requirement that the cause of action "arise from" the transaction of business in Massachusetts, the Supreme Judicial Court has adopted a liberal "but for" test. Id.

**D.    Noisette did not transact business in Massachusetts.**

Generally, the "transacting any business" clause is satisfied by the purposeful and successful solicitation of business from residents of the Commonwealth by a defendant or its agent. See Tatro v. Manor Care, 416 Mass. 763, 767 (1994). On the other hand, minor or isolated transactions with a Massachusetts resident will likely be an insufficient basis for jurisdiction pursuant to § 3(a). New Hampshire Ins. Guar. Ass'n v. Markem Corp., 424 Mass. 344 (1997) (no jurisdiction in Massachusetts over New Hampshire defendant as contract between defendant and plaintiff insurer was concluded in New Hampshire, even though plaintiff was headquartered in Massachusetts and the defendant sent checks, forms and correspondence to the plaintiff's Massachusetts office); Welford v. Nobrega, 411 Mass. 798 (1992) (bank which had no office, mailing address, telephone listing, or employees in Massachusetts, and did not solicit business in Massachusetts or maintain ongoing business relationship with Massachusetts resident did not transact business in Massachusetts within meaning of long-arm statute; dismissal on jurisdictional grounds affirmed 'Automatic' Sprinkler Corp. of America v. Seneca Foods Corp.,

931219v1

361 Mass. 441 (1972) (affirmance of a contract and the making of partial payments pursuant to the contract through the mail constituted insufficient contacts to confer jurisdiction over defendant pursuant to § 3(a)); Droukas, 375 Mass. 149 (defendant's placement of advertisement in publication distributed in Massachusetts, defendant's receipt of telephone call from plaintiff in Massachusetts regarding engine sale, sending of correspondence by defendant to plaintiff in Massachusetts and shipment of engines "collect" to plaintiff in Massachusetts all did not constitute sufficient contacts to confer jurisdiction over defendant in Massachusetts, as defendant had no office or property in Massachusetts and had never previously done business in Massachusetts).

The "transacting business" test under section 3(a) is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party. See e.g., Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1 (1979). The purely incidental contacts involved in the case at hand, such as phone conversations, correspondence, and monthly payments for services rendered, are insufficient to support an assertion of personal jurisdiction when all substantive business transactions took place in South Carolina. See Lyle Richards Int'l v. Ashworth, Inc., 132 F.3d 111 (1st Cir. 1997) (defendant's contacts with Massachusetts were purely incidental when most of its core contractual responsibilities would have been performed out of state). Thus, in the instant action, the plaintiff is unable to satisfy the elements for jurisdiction under the Massachusetts Long Arm Statute.

Noisette's status as a nonresident buyer of goods or services from a Massachusetts provider is significant in determining whether it transacted business under section 3(a). See Aub v. Technicolor Entm't Servs., 224 F. Supp. 2d 371 (2002). The Supreme Judicial Court has noted that section 3(a) does not confer jurisdiction over all nonresident buyers (i.e. Noisette) of

Massachusetts goods and services. Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1 (1979) (such a broad application could produce "the unwanted result of discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts."); see also New Hampshire Ins. Guar. Ass'n v. Markem Corp., 424 Mass. 344 (1997) ("Potential buyers would be discouraged from dealing with our suppliers" if section 3(a) were interpreted as broadly as argued by the plaintiff.). The courts are more likely to find personal jurisdiction under deliberate contacts that qualify as the transaction of business within section 3(a) when nonresident sellers of goods and services sell their product to Massachusetts purchasers. See Aub v. Technicolor Entm't Servs., 224 F. Supp. 2d 371. Thus, as a matter of policy, Massachusetts courts are somewhat less inclined to find personal jurisdiction when a nonresident party, such as Noisette, simply purchases goods or "consulting" services from Massachusetts. See Id.

The Honorable Judge O'Toole, in a case closely analogous to the matter at bar, granted a motion to dismiss for lack of personal jurisdiction where contacts where too fortuitous and incidental to fall within reach of section 3(a). Aub v. Technicolor Entm't Servs, 224 F. Supp. 2d 371 (2002) (motion to dismiss for). In Aub, a Massachusetts consultant established a working relationship by letter, defendant paid fees, defendant called plaintiff on several occasions, defendant never physically entered Massachusetts, and all face-to-face meetings with defendant took place elsewhere. Id. Similarly, the facts in this case parallel those noted in Aub. As in Aub, Noisette's reasons for hiring MLS had nothing to do with its location in Massachusetts and it was of no consequence to Noisette where MLS was located. Accordingly, Noisette's contacts with MLS are too fortuitous and incidental to fall within reach of the Massachusetts Long Arm Statute. See also Information Mapping Inc. v. Access Health Sys., 2000 Mass. Super. LEXIS

10

931219v1

198 (granting motion to dismiss because "ancillary activities which are only incidental to the performance of a project located in another state do not fall within the meaning of the Massachusetts Long Arm Statute where plaintiff performed and completed all work at defendant's office in Tennessee).

Defendant Noisette is a South Carolina limited liability corporation that was specifically created to redevelop the Charleston Naval Shipyard in South Carolina. Noisette's principal and only business purpose remains the Charleston Naval Shipyard in South Carolina. At no time has Noisette owned assets or property in Massachusetts and at no time has it had a Massachusetts office, telephone number, bank account, or post office box. All of the officers and employees of defendants are South Carolina residents and never traveled to Massachusetts to business with ML on behalf of Noisette. Noisette's officers have conducted all business in South Carolina. Every business meeting attended personally between Marken, for ML, and the officers of Noisette occurred in Charleston, South Carolina. No meetings occurred in Massachusetts.. Finally, the only business relationship between Noisette and any Massachusetts company is pursuant to the letter agreement, with MLS, drafted by MLS and addressed to Noisette, in South Carolina, which is attached. Thus, based on the above, the requisite elements that would allow jurisdiction over Noisette under section 3(a) are not met in this matter, and thus, the Court does not have jurisdiction over Noisette under the Massachusetts Long Arm Statute.

### E. Even if the requirements of the Massachusetts Long Arm Statute are satisfied, jurisdiction over Noisette is inconsistent with the due process requirements of the Fourteenth Amendment.

In order for Massachusetts courts to exercise personal jurisdiction over non-resident defendants, a plaintiff must not only establish a ground for jurisdiction pursuant to G.L. c. 223A § 3, but must also show that jurisdiction under Massachusetts law is consistent with the due process requirements of the Fourteenth Amendment. Tatro, 416 Mass. at 767. Jurisdiction over

11

931219v1

non-resident defendants under state law will be appropriate if the non-resident defendant has sufficient minimum contacts with the forum state such that a lawsuit would not offend "traditional notions of fair play and substantial justice." Good Hope Indus., 378 Mass. 1, 7 (1979), quoting International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Furthermore, a defendant must also have purposely availed itself of the "privilege of conducting activities within the forum state, thus invoking the benefits and protection of its law." Good Hope Indus., 378 Mass. at 7, quoting Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The activities in the forum state must be of a nature which would allow a non-resident defendant to "reasonably anticipate being haled into court there." Durette v. International Cancer Screening Laboratories, Inc., 1995 WL 809562 (Mass.Super. 1995), quoting World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980). The inquiry thus becomes whether there was some minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come into Massachusetts to defend the action. Good Hope Indus., 378 Mass. at 7.

### F.    There is no basis for general jurisdiction over Noisette.

In analyzing minimum contacts, courts have distinguished between two forms of jurisdiction: "general" and "specific." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 621 (1st Cir. 2001). General Jurisdiction is not appropriate for this action. Id., quoting United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992) ("General" jurisdiction exists when the litigation "is not directly founded on the defendant's forum-based contacts, but the defendant nevertheless engaged in systematic activity, unrelated to the suit in the forum state."). There are no alleged facts in the complaint supporting unrelated systematic activity by

Noisette in Massachusetts. Therefore, MLS must prove specific jurisdiction exists to satisfy constitutional requirements for personal jurisdiction.

### G. There is no basis for specific jurisdiction over Noisette.

Specific jurisdiction may be asserted where the cause of action arises directly out of, or relates to the defendant's forum-based contacts. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 621 (1st Cir. 2001). Courts, including the First Circuit, employ a three-part test to determine whether sufficient contacts exist to exercise specific personal jurisdiction:

> "First, an inquiring court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum. Second, the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws. Third, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction."

See United States v. Swiss Am. Bank, Ltd., 274 F.3d at 62; citing Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

In order to determine if the first requirement of the test for sufficient contacts has been satisfied, it is important to focus on the nexus between defendant's contacts and the plaintiff's cause of action. Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995). First, MLS is required to identify the alleged contacts and their connection to the cause of action. See Id. (stating that the defendant's contacts are central to each prong of the tripartite analysis). The primary connection Noisette has with plaintiff is a February 14, 2002 engagement letter, establishing a relationship between the parties for services to take place outside of the Commonwealth. Yet, this alone, is not sufficient to establish a nexus for the purpose of specific jurisdiction. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985) (a contract alone cannot establish minimum contacts).

A contract-plus analysis, developed in Burger King, is used to determine whether a contract is sufficient to establish minimum contacts See United States v. Swiss Am. Bank, Ltd., 274 F.3d at 621. A court must consider the contracts "prior negotiations and contemplated future consequences, along with …the parties' actual course of dealing …must be evaluated in determining whether the defendant" has minimum contacts with the forum. Burger King, 471 U.S. at 479. In sum, a contract must be considered within its circumstances and effect. Furthermore, Noisette's lack of physical presence in Massachusetts is a compelling factor negating specific jurisdiction, but it is not determinative. Pritzker v. Yari, 42 F.3d 53, 62 (1st Cir. 1994) (a non-resident defendant may not always elude jurisdiction by remaining physically outside the forum). To establish a nexus in specific jurisdiction without physical presence plaintiff must prove Noisette purposefully directed its efforts towards residents of Massachusetts. Burger King, 471 U.S. at 476. Plaintiff's complaint does not allege Noisette directed any efforts or solicitations towards Massachusetts residents; on the other hand, it is South Carolina residents that are affected by the working relationship between Noisette and Plaintiff. Moreover, plaintiff may not establish jurisdiction simply on phone conversations or email with Noisette. See Aub v. Technicolor Entertainment Services, 224 F.Supp. 2d 371 (2002) (stating that the "fact that there were long-distance communications between the parties by mail and telephone is not enough to justify the conclusion that [business was transacted] in Massachusetts."). Finally, the fact that Noisette made payments by mail to plaintiff is not significant when determining jurisdiction. See Automatic Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass. 441, 445 (1972) (stating that "making payments through the mail is not a significant contact.); see also Information Mapping Inc. v. Access Health Sys., 2000 Mass. Super. LEXIS 198 (insufficient

contacts for personal jurisdiction when alleged contract occurred in Massachusetts and defendant corresponded with Massachusetts plaintiff through letters, status reports and billing information).

All other relevant facts occurred outside of Massachusetts. Significantly, Noisette's initial and all follow up personal business contacts with plaintiff transpired in South Carolina. Plaintiff notably sent Tony Marken to Noisette in South Carolina. Given the engagement letter, the circumstances and the effect of the business relationship, there are insufficient minimal contacts to establish the first requirement for specific jurisdiction.

In analyzing whether the "purposeful availment" prong of the requirements for specific personal jurisdiction has been satisfied, voluntariness and foreseeability govern. Sawtelle, 70 F.3d at 1391; See also Phillips Exeter, 196 F.3d at 292 (defendant must "purposefully and voluntarily direct his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to jurisdiction based on [the] contacts."); Ticketmaster-N-Y., 26 F.3d 201, 207-208; United Elec. Workers, 960 F.2d at 1088 (a defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there.). In addition, the enforcement of personal jurisdiction over a non-resident defendant is foreseeable when that defendant has established a continuing obligation between himself and the forum state. Sawtelle, 70 F.3d at 1393. As such, in this action, it is unreasonable to assert jurisdiction over Noisette because it was unforeseeable that a South Carolina redeveloper would be hailed into a Massachusetts court as a result of hiring a Massachusetts consulting firm that performed its services in South Carolina and Washington D.C.

Lastly, even if the first two requirements of specific personal jurisdiction are satisfied, courts must consider other factors that take into account the fairness of subjecting nonresidents to

the authority of a foreign tribunal. Clark, 977 F.Supp. at 544. These factors, known as the Gestalt factors, consist of: 1) the defendant's burden of appearing in the forum state, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most effective resolution of the controversy, and 5) the common interests of all sovereigns in promoting substantive social policies. Clark, 977 F.Supp. at 544. The Gestalt factors become relevant only after the first two requirements for specific personal jurisdiction have been fulfilled. Sawtelle, 70 F.3d at 1394. Furthermore, the weaker a plaintiff's showings on the first two requirements, the less a defendant need show in terms of unreasonableness to defeat jurisdiction. Id.

In the instant action, the plaintiff is unable to show any nexus and purposeful availment between Noisette and Massachusetts. Moreover, the Gestalt factors further establish the unfairness and injustice of asserting jurisdiction over Noisette. Jurisdiction over Noisette, who is a citizen of South Carolina, creates a substantial burden for court appearances. In addition, there is no ground based on public policy or otherwise that supports Massachusetts interest in adjudicating this dispute. Furthermore, the plaintiff is in no way waiving its ability to obtain convenient and effective relief in the courts. Plaintiff has traveled to South Carolina on numerous occasions to fulfill its services to Noisette, thus any continued travel to pursue this matter in South Carolina courts is not burdensome to plaintiff. Finally, it is in the judicial systems interest to hear this matter in South Carolina where all business and consulting took place and where all defendant's employees reside. As such, the substantial burden to defend this action in Massachusetts outweighs any interest the state or the plaintiff has in adjudicating the matter in an effective and convenient way. Therefore, the plaintiff's complaint against Noisette should be dismissed.

**H.     Case should be dismissed based upon the doctrine of *Forum non conveniens*.**

Even if the plaintiff establishes personal jurisdiction defendant moves that this Court dismiss this action on the basis of *forum non conveniens* as a litigation and trial in this matter would revolve around real estate in South Carolina and the plaintiff's contacts with representatives from Noisette Company, the City of Charleston and the Charleston Naval Complex Redevelopment Authority  This Court may dismiss an action if it finds that "in the interest of substantial justice, the action should be heard in another forum." Mass. Gen. L. § 223A, § 5. Massachusetts courts consider the factors applicable in federal court as outlined by the U.S. Supreme Court in Gulf Oil Corp. v. Gilbert:

> the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, cost of obtaining attendance of willing witnesses, possibility of view of the premises if that be appropriate, and all other practical problems that make trial of a case easy, expeditious and inexpensive.
>
> W.R. Grace & Co. v. Hartford Accident. and Indem. Co.,407 Mass. 572, 577 (1990) quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-509 (1947).

If an action should be heard elsewhere, a federal court generally transfers it to another district. Consequently, the federal venue-transfer statute imposes the additional requirement that it must have been possible to originally bring the matter in the transferee district. This ensures that granting the motion will not leave the plaintiff without a court. Because a Massachusetts court can only dismiss an action, the Massachusetts statute does not impose this requirement. But the Massachusetts Supreme Judicial Court has held that dismissal "should not be made unless all the parties most probably can be made parties in another, more convenient forum . . . ." W.R. Grace & Co., 407 Mass. at 579.

Motions to dismiss for forum-non-conveniens are disfavored. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. [Citation.]" W.R. Grace & Co. v. Hartford Accident. and Indem. Co.,407 Mass. 572, 577

17

931219v1

(1990). On the other hand, the court's jurisprudence demonstrate that "the domestic residence of parties is not decisive in requiring courts to assume jurisdiction of a cause, but that the basis of inquiry will be whether justice can be as well done here as in another jurisdiction to which parties may have access." Universal Adjustment Corp. v. Midland Bank, Ltd. 281 Mass. 303, 314 (1933).

In this case *forum non conveniens* should not be disfavored because the parties "most probably" can be made parties in another, more convenient forum such as South Carolina. Noisette is amenable to suit in South Carolina because it is resident in South Carolina and is formed under the law of the State of South Carolina. The courts of South Carolina provide an available and adequate forum for the resolution of the plaintiff's claim.

The dispute arises out of consulting work relative to the real estate at the former Charleston Naval Shipyard in South Carolina. The defendant is a South Carolina limited liability company and the consulting work provided by the plaintiff took place in South Carolina and Washington D.C. Persons with discoverable knowledge include representatives from Noisette, the City of Charleston and the Charleston Naval Complex Redevelopment Authority, all of which are located in South Carolina. Additionally, all three entities likely have discoverable and relevant documents regarding to the allegations in the plaintiff's complaint. An action brought in South Carolina will facilitate the attendance of witnesses.

Conversely, other than the plaintiff, the defendant does not anticipate any other citizens of Massachusetts having discoverable knowledge or possessing discoverable or relevant documents based upon the allegations in the plaintiff's complaint. Furthermore, the plaintiff's, have an incentive to travel to South Carolina to pursue this action. On the other hand, former Noisette employees, such as those who possess knowledge as to the intent of the engagement

letter and the alleged performance bonus, may be less cooperative to travel to a Massachusetts court.

Because almost all evidence and witnesses are located in South Carolina and because the contract at issue involved a large parcel of property in Charleston South Carolina, serious unfairness to Noisette will result unless the case is dismissed and transferred to South Carolina. As such, a South Carolina court is in a better position to handle the matter in an expeditious and inexpensive manner; therefore, justice is not served by holding this action in Massachusetts.

### IV.   CONCLUSION

For the above-stated reasons, Noisette respectfully requests that this Court grant its Motion to Dismiss based on the lack of personal jurisdiction or in the alternative for *forum non conveniens*.

> Respectfully submitted,
> The Noisette Company, LLC
> d/b/a Noisette Company,
> By his attorneys,
>
> MORRISON, MAHONEY & MILLER, LLP
>
> /s/ Sean
> _____
> Sean F. McDonough  BBO# 564723
> Daniel A. Leonardo  BBO# 659085
> 250 Summer Street
> Boston, MA 02210
> (617) 439-7500

Dated: April 22, 2004

931219v1